## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## PALM BEACH DIVISION

| | | |
|---|---|---|
| **JENNA MARSHALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:**_____ |
| | ) | |
| **THE HARRISON HOUSE, LLC d/b/a** | ) | **JURY DEMAND** |
| **DEATH OR GLORY, and DANIEL** | ) | |
| **DORE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### COMPLAINT WITH DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, JENNA MARSHALL (hereinafter "Plaintiff"), by and through

her undersigned counsel, and hereby files this lawsuit against Defendant, THE HARRISION

HOUSE, LLC d/b/a DEATH OR GLORY (hereinafter "Defendant" or "Employer"), and DANIEL

DORE, an individual and employee of Employer ("Dore") (Employer and Dore are hereinafter

sometimes referred to collectively as "Defendants"), and states as follows:

### JURISDICTION AND VENUE

1.      This is an action by Plaintiff, Jenna Marshall, for compensatory and punitive

damages,  declaratory, and injunctive relief under Title VII of the Civil Rights Act of 1964, (42

U.S.C. § 2000e, *et seq.*), as amended ("Title VII"), the Florida Civil Rights Act of 1992, Fla. Stat.

§ 760.01 *et seq*. ("FCRA"), and Florida state law (*e.g.* assault and battery, Fla. Stat. §§ 784.011,

784.013) and to redress injury caused by Defendant's disparate treatment including in discipline,

demotion, termination of her employment, being paid less than males to perform comparable work,

retaliation for complaining about Dore's sexual assault and battery, terminating Plaintiff's

employment after she complained internally, rehiring her to cover up Defendant's failure to investigate and/or address Dore's sexual harassment and assault and battery, assault and battery by Defendants, and for negligent hiring, training, and retention by Defendant of Dore.

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and Title VII. This Court has supplemental jurisdiction of the Florida Civil Rights Act Claims and any other state law claims pursuant to 28 U.S.C. § 1367. Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

3.    Defendant employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4.    Venue is proper in Palm Beach County (28 U.S.C. § 89(c)), because Defendant does business in Palm Beach County, and some or all of the acts alleged herein took place in Palm Beach County.

5.    Defendant Harrison House, LLC's principal place of business is in Palm Beach County, at 116 NE 6 Avenue, Delray Beach, FL 33483.

6.    Defendant Daniel Dore, an individual, on information and belief, lives or resides in West Palm Beach, Florida.

7.    Plaintiff is a resident of Palm Beach County, and her address is in Boca Raton, Florida.

8.    All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

SALAS LAW FIRM, P.A.

9.      On or about May 6, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2019-03816. A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

10.      On or about October 9, 2019, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "B".

## GENERAL FACTUAL ALLEGATIONS

11.      Plaintiff was hired by Defendant in December 2018, as a full-time employee, in the position of "line cook" until her termination on January 28, 2019, and then in the same position from on or about February 15, 2019 to her termination on or about March 25, 2019.

12.      Plaintiff's rate of pay during both periods of employment was $15.00/hour.

13.      Plaintiff worked around 40-hours per week (4-5 days per week or more) before her first termination on January 28, 2019.

14.      On January 27, 2019, Defendant held its annual holiday party which it sponsored, paid for, and encouraged employees to attend.

15.      The party was held at Defendant's location in Delray Beach.

16.      At the party and near its end, Defendant Dore, Defendant's head/executive chef (and Plaintiff's supervisor), was or appeared to be under the influence of alcohol.

17.      Plaintiff offered to give Dore a ride home, including because he lived nearby.

18.      Dore sat in the passenger seat.

19.      During the drive, Dore acted aggressively toward Plaintiff getting closer and closer to her personal space.

20.      Dore told Plaintiff that she "was going to be fired."

21.     Soon after, Dore grabbed Plaintiff's neck and pulled her face toward his.

22.     Dore attempted to kiss Plaintiff and accomplished the kiss, however briefly.

23.     Dore bit Plaintiff's lip in the process.

24.     Plaintiff told Dore to "stop" including the statement that "he was hurting her neck."

25.     Dore responded "why don't you just suck it already" referring to and indicating toward his penis.

26.     Plaintiff refused, telling him "no."

27.     Including because Dore, mere moments or minutes earlier, had told Plaintiff she "was going to be fired," his sexual assault and aggressiveness demonstrated to Plaintiff that unless she consent to his sexual advances that she would, in fact, be fired.

28.     After Plaintiff refused to engage in oral sex, Dore began arguing with and yelling at her.

29.     Plaintiff stopped her car and told Dore to get out of the car.

30.     Dore got out of the car, and Plaintiff drove away.

31.     Plaintiff's next scheduled day of work was January 28, 2019.

32.     Plaintiff texted Dore that morning asking whether she was fired and "am I supposed to come into work today?"

33.     Plaintiff's shift began at noon.

34.     Dore responded that she should come into work.

35.     Plaintiff arrived to work that day on time and began working.

36.     Rob Lynch, one of Defendant's sous chefs, observed something "wrong" with Plaintiff that day.

37.     Plaintiff informed Lynch about the previous night's sexual assault and battery by Dore.

38.     Lynch told Plaintiff that he was not surprised about Dore's behavior and told her that this was not the first time something like this had happened with Dore.

39.     Also, a newly hired line cook, Mike S. l/n/u, was present that day and was there to be trained by Defendant.

40.     About an hour after Mike arrived, Dore instructed Plaintiff to go outside of Defendant's store location to speak to him.

41.     Plaintiff, outside with only Dore, complained to Dore about his sexual assault on her the night before.

42.     Dore claimed he did not remember what happened.

43.     In the same breath, Dore apologized for his behavior saying what he did was "not okay."

44.     Dore, an agent of Employer, then told Plaintiff she was fired, effective immediately.

45.     Dore told Plaintiff the reason was "she was not available to work."

46.     Plaintiff collected her things and left the premises, emotionally distressed by the sexual assault and battery, her termination, and Defendant's false reason for her termination.

47.     The stated reason was and is false; Plaintiff made herself available to work and had been since she was hired.

48.     Plaintiff's termination on January 28, 2019 (hereinafter sometimes referred to as "first termination") was, in reality, in retaliation for refusing Dore's sexual advances and for complaining moments earlier.

49.     Plaintiff's termination was, in reality, in retaliation for refusing Defendant, by and through one of its agent's, sexual advances and assault and battery.

50.     On or about February 10, 2019, Plaintiff went to Defendant's location to pick up her last paycheck.

51.     When she arrived, David l/n/u, one of Defendant's managers, and Amye Harrison, one of Defendant's owners, met with Plaintiff.

52.     David and Harrison apologized to Plaintiff for Dore's sexual harassment and assault/battery.

53.     David and Harrison told Plaintiff that Dore had not been terminated, including because they "did not want to ruin his career."

54.     On information and belief, similar sexually harassing acts, assault and/or battery had been reported or occurred when Dore worked for Defendant.

55.     To the extent Dore had harassed others besides Plaintiff, Defendant knew or should have known of Dore's proclivities to engage in such behavior and allowed a person Defendant should have known to be dangerous or similar on the premises.

56.     On information and belief, other females suffered sexual harassment, gender discrimination, assault and/or battery from Dore when they worked for Defendant.

57.     Defendant sanctioned or otherwise allowed Dore to continue working and to attend company functions (like the holiday party) fully aware of Dore's capacity for sexual harassment.

58.     On or around February 13, 2019, Plaintiff had received a job offer to work at the Salt 7 restaurant in Delray Beach.

59.     Plaintiff was scheduled to start working at Salt 7 later that day.

SALAS LAW FIRM, P.A.

60.     On February 13, 2019, out of the blue, Plaintiff received a call from Johnny DeMartini, Defendant's executive chef and Plaintiff's supervisor.

61.     Plaintiff went to Defendant's location that day.

62.     Plaintiff met with DeMartini and Amye Harrison, one of Defendant's owners, at Defendant's location.

63.     Harrison apologized to Plaintiff for Dore's behavior.

64.     Harrison told Plaintiff Dore had been terminated and no longer worked there.

65.     Harrison and DeMartini then offered to rehire Plaintiff in her old position of line cook.

66.     Plaintiff accepted and returned to work on or about February 15, 2019, and she chose not to accept the job offer at Salt 7.

67.     Plaintiff, on information and belief, believes that Defendant rehired her as a ruse/scheme at her expense and/or an attempt to cover up Dore's sexual assault and battery and/or Defendant's unlawful discrimination and retaliation.

68.     Underscoring her belief, within a few days of her returning to work, DeMartini told her that Dore was "coming in" that day to get some things and asked Plaintiff if that was "okay."

69.     Plaintiff, although distressed by the question and confused as to why Dore needed to come in when she was working, wanted to be a team player and said "okay."

70.     Dore's appearance at work that day made Plaintiff very uncomfortable and distressed and did not understand why Dore could not visit the location when she was not present.

71.     Adding to her belief of a ruse/scheme, Defendant demoted Plaintiff in February and March 2019 by reducing her hours on the schedule from around forty (40) hours/week (four-to-

five days-plus per week) to around sixteen (16) to twenty-four (24) hours per week (two-to-three days per week).

72.     Adding to her belief of a ruse/scheme, Plaintiff was inexplicably called off the schedule by DeMartini, whereas other employees, including similarly situated male employees (e.g. Mike S. l/n/u, Rob Lynch) were not called off and/or did not have their hours reduced.

73.     Plaintiff complained to DeMartini about her hours being reduced.

74.     Neither DeMartini nor anyone with Defendant responded to Plaintiff's complaint of reduced hours or demotion.

75.     After several weeks of reduced/demoted shifts, on or about March 26, 2019, Defendant, through its agents DeMartini and Tammy l/n/u (assistant general manager of Defendant), called Plaintiff to the patio to speak with her (hereinafter sometimes referred to as Plaintiff's "second termination").

76.     DeMartini and Tammy told Plaintiff she was terminated because of her "work performance," providing no examples of poor work performance.

77.     DeMartini and Tammy told Plaintiff she was terminated "for being late."

78.     DeMartini and Tammy told Plaintiff the lack of work and her being off the schedule was because of "labor costs."

79.     Plaintiff had never received any discipline for work performance or for being late.

80.     DeMartini and Tammy's shifting and inconsistent statements about the reason for her second termination reinforced her belief that the reason she was rehired was as a ruse/scheme to cover up Defendant's previous unlawful termination.

81.     Plaintiff believes that comparator males, including male line cooks, were treated more favorably in the terms and conditions of their employment, including by being paid more than Plaintiff for comparable work.

82.     Plaintiff believes that comparator males, including male line cooks, were treated more favorably than her in the terms and conditions of their employment, because they received more shifts/hours and were not called off the schedule by DeMartini.

83.     Plaintiff believes that comparator males, including male line cooks, were treated more favorably than her in the terms and conditions of their employment, because to the extent Plaintiff was ever late to work, comparator males were also late to work and were not disciplined or terminated.

84.     Plaintiff believes that comparator males, including male line cooks, were treated more favorably than her in the terms and conditions of their employment, because to the extent Plaintiff had subpar work performance, comparator males also engaged in the same subpar behavior and were not disciplined or terminated.

85.     Plaintiff believes that comparator males, including male line cooks, were treated more favorably than her in the terms and conditions of their employment, by not being sexually assaulted, terminated, and then rehired in a misguided attempt to cover up the previous failure of Defendant in its EEO responsibilities, including failing to investigate Dore.

86.     The reasons for Plaintiff's first termination and second termination are not only not true, they are also not legitimate and not worthy of belief, and that question is for the jury and/or that there are male comparators that were engaged in the same or similar conduct and were not disciplined or terminated.

87.     On information and belief, Defendant and its agents treated male employees, including those similarly situated to Plaintiff, more favorably in terms of their pay.

88.     On information and belief, Defendant, whether by rehiring Dore as an employee or otherwise engaging him as an independent contractor, has paid Dore monies for services or paid him for in kind services, after his purported termination in or around early February 2019.

89.     Plaintiff has, and continues to suffer, damages, including emotional distress, from the acts and omissions of Defendant and its agents and former agents.

90.     Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her gender was factor or a motivating factor(s) for Defendant's discriminatory and retaliatory termination.

91.     Defendant is or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

**Count I – Title VII & FCRA Quid Pro Quo Sexual Harassment[1]**

92.     Plaintiff realleges all of the preceding paragraphs of this complaint.

93.     Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII and the FCRA.

94.     Plaintiff is a member of a protected class, female.

95.     Dore was a manager and an agent of Defendant at all times relevant to this lawsuit, including throughout January 2019.

96.     On or about January 27, 2019, Plaintiff was subjected to unwelcome sexual harassment from Dore as set forth herein.

97.     The harassment complained of is on the basis of sex/gender.

---

[1] To the extent necessary, Plaintiff's claims are pled in the alternative.

98.     Defendant changed Plaintiff's conditions of employment when it terminated her on or about January 28, 2019.

99.     Plaintiff's reaction to the harassment complained of affected tangible aspects of her compensation, and/or terms, conditions and/or privileges of employment, including by her first termination.

100.    Plaintiff's rejection of her supervisor's sexual advances, after returning from Defendant's holiday party and, moments or minutes after the supervisor said she was going to be fired, and her termination on her next work day, create a jury question as to whether the request for sexual favors and oral sex was a precondition to continued employment with Defendant.

101.    Defendant allowed and/or sanctioned Dore's conduct toward Plaintiff, its agent, and initially refused to take any action toward Dore because of "his career."

102.    On information and belief, Defendant later told Plaintiff Dore was fired in a ruse/scheme to get Plaintiff to return to work to cover up its handling of Dore, including because of the temporal proximity between the assault/battery, the complaint, and the termination.

103.    Defendant, by its handling of its agent's sexual assault and battery, is liable to Plaintiff for quid pro quo sexual harassment.

104.    Defendant's quid pro quo sexual harassment concerned one or more of the activities enumerated in Title VII and the FCRA, because Plaintiff suffered a tangible employment action resulting from a refusal to submit to Dore's sexual demands.

105.    As a result of the aforementioned conduct, Defendant violated Title VII and the FCRA.

106.    Any purported legitimate reason for Plaintiff's discipline given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

107.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in (false, inaccurate, and/or disparate) discipline resulting in her suffering injury, including as a pretext for termination, and being damaged.

108.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate sexual harassment from the workplace and to prevent it from occurring.

109.    Plaintiff further alleges that she suffered from a sexually hostile work environment and/or that Defendant engaged in a pattern and practice of allowing known harassers to remain employed and/or that the violations of her rights were continuing in nature by Defendant.

110.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count II – Title VII & FCRA Disparate Treatment (Gender) – First Termination

111.    Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

112.    Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII and the FCRA.

113.    Plaintiff is a member of a protected class, female.

114.    Plaintiff was qualified for her position.

115.    Plaintiff suffered an adverse employment action(s), discipline without any warning resulting in her first termination.

116.    Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including those males named in the complaint and other comparator males presently unknown, were treated more favorably than her in the terms and

conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, "unavailability"), not resulting in termination of employment, and by being paid less than males for comparable work.

117.    Defendant intended to discriminate and did discriminate on the basis of gender, and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it terminated her employment.

118.    Defendant's discrimination concerned one or more of the activities enumerated in Title VII and the FCRA.

119.    As a result of the aforementioned conduct, Defendant violated Title VII and the FCRA.

120.    Any purported legitimate reason for Plaintiff's termination, including Dore's false statement about "unavailability," given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

121.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being terminated, and was damaged.

122.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

123.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

124.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count III – Title VII & FCRA Retaliation – First Termination

125.     Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

126.     Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII and the FCRA.

127.     Plaintiff engaged in a statutorily protected activity(ies), complaining to Dore about his sexual assault and battery on January 27 and 28, 2019.

128.     Plaintiff suffered an adverse employment action, being terminated by Defendant, less than a day after the assault and battery occurred, and within minutes of having Dore apologize to Plaintiff about it, including that it was "not okay."

129.     There is or are a casual connection(s) between Plaintiff's complaint, and the incorrect and discriminatory discipline and unlawful termination she received from Defendant and its managers by allowing her termination following the sexual harassment/assault and battery after Defendant's holiday party.

130.     Defendant intended to retaliate and did retaliate on the basis of Plaintiff's internal complaint of sexual harassment.

131.     Defendant's retaliation concerned one or more of the activities enumerated in Title VII and the FCRA.

132.     As a result of the aforementioned conduct, Defendant violated Title VII and the FCRA.

133.    Any purported legitimate reason for Plaintiff's discipline given by Defendant is, in reality, a pretext for unlawful retaliatory treatment.

134.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and in termination.

135.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

136.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation based on her internal complaint of discrimination and/or that the violations of her rights were continuing in nature by Defendant.

137.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count IV – Assault and Battery (Against Employer)

138.    Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

139.    This is an action for assault and battery against Defendant under Sections 784.011, 784.013, Florida Statutes, and under Florida Tort Common Law.

140.    On or about January 27, 2019, Dore assaulted and battered Plaintiff after leaving Defendant's holiday party at its location, the work place, sitting next to Plaintiff in the passenger seat, got in her personal space, kissed her, bit her lip, grabbed her by the neck, hurt her neck, and demanded oral sex.

141.    Defendant, by and through one of its managers/agents acting within the scope of his employment, Dore, intentionally and unlawfully threatened Plaintiff by word and act to do violence to her, he had the apparent and actual ability to do so, and engaged in acts – e.g. moments

after saying she was going to be fired, grabbing her neck, kissing her, biting her lip – which created a well-founded fear in Plaintiff that violence was (and it was) imminent.

142.    Defendant, by and through one of its managers/agents acting within the scope of his employment, Dore, intentionally and unlawfully touched Plaintiff's person.

143.    Defendant, by and through one of its managers/agents acting within the scope of his employment, intentionally and unlawfully caused physical and emotional harm to Plaintiff.

144.    Dore's actions were within the scope of his employment.

145.    Dore raised her employment and the continuation of her employment moments or minutes before assaulting and battering her and demanding oral sex, making Plaintiff believe that performing oral sex was a precondition to continued employment.

146.    Defendant's decision to hire and retain Dore, despite his tortious conduct and propensity therefor, as well as Plaintiff's internal complaint of discrimination, further underscores the reality that Defendant sanctioned, approved, allowed and/or otherwise enabled Dore, its agent, to engage in such actions within the scope of his employment.

147.    Defendant is liable to Plaintiff under respondent superior for the actions of its agent and/or the instant facts of this case demonstrate that a jury question exists as to The Harrison House's liability under respondent superior.

148.    Plaintiff is seeking myriad damages, such as compensatory and punitive damages, including from emotional distress and mental anguish.

### Count V – Assault and Battery (Against Dore)

149.    Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

150.    This is an action for assault and battery against Defendant Dore under Sections 784.011, 784.013, Florida Statutes, and under Florida Tort Common Law.

151.     On or about January 27, 2019, Dore assaulted and battered Plaintiff after leaving Defendant's holiday party at its location, the work place, sitting next to Plaintiff in the passenger seat, got in her personal space, kissed her, bit her lip, grabbed her by the neck, hurt her neck, and demanded oral sex.

152.     Dore, intentionally and unlawfully threatened Plaintiff by word and act to do violence to her, he had the apparent and actual ability to do so, and engaged in acts – e.g. moments after saying she was going to be fired, grabbing her neck, kissing her, biting her lip – which created a well-founded fear in Plaintiff that violence was (and it was) imminent.

153.     Dore, intentionally and unlawfully touched Plaintiff's person.

154.     Dore intentionally and unlawfully caused physical and emotional harm to Plaintiff

155.     Plaintiff is seeking myriad damages, such as compensatory and punitive damages, including from emotional distress and mental anguish.

**Count VI – Title VII & FCRA Disparate Treatment (Gender) – Demotion**

156.     Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

157.     Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII and the FCRA.

158.     Plaintiff is a member of a protected class, female.

159.     Plaintiff was qualified for her position.

160.     Plaintiff suffered an adverse employment action(s), soon after being rehired, she her hours reduced and/or called off the schedule which was or was tantamount to a demotion.

161.     Similarly situated comparator employees, including those males named in the complaint and other comparator males presently unknown, were treated more favorably than her

in the terms and conditions of their employment, including not having their hours reduced and/or not being called off the schedule.

162.     Defendant intended to discriminate and did discriminate on the basis of gender, and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it demoted her.

163.     Defendant's discrimination concerned one or more of the activities enumerated in Title VII and the FCRA.

164.     As a result of the aforementioned conduct, Defendant violated Title VII and the FCRA.

165.     Any purported legitimate reason for Plaintiff's termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

166.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being demoted, and was damaged.

167.     Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

168.     Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

169.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count VII – Title VII & FCRA Disparate Treatment (Gender) – Second Termination**

170.     Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

171.     Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII and the FCRA.

172.     Plaintiff is a member of a protected class, female.

173.     Plaintiff was qualified for her position.

174.     Plaintiff suffered an adverse employment action(s), discipline without any warning resulting in her second termination.

175.     Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including those males named in the complaint and other comparator males presently unknown, were treated more favorably than her in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false, shifting, and inconsistent reasons for termination, "work performance," "being late," and due to "labor costs") not resulting in termination of employment, and by being paid less than males for comparable work.

176.     Defendant intended to discriminate and did discriminate on the basis of gender, and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it terminated her employment in March 2019.

177.     Defendant's discrimination concerned one or more of the activities enumerated in Title VII and the FCRA.

178.     As a result of the aforementioned conduct, Defendant violated Title VII and the FCRA.

179.     Any purported legitimate reason for Plaintiff's termination, including DeMartini's and Tammy's reasons given to Plaintiff are, in reality, a pretext for unlawful discriminatory treatment.

180.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being terminated, and was damaged.

181.     Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

182.     Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

183.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VIII – Title VII & FCRA Retaliation – Failure to Investigate

184.     Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

185.     Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII and the FCRA.

186.     Plaintiff engaged in a statutorily protected activity(ies), complaining to Dore about his sexual assault and battery on January 27 and 28, 2019, and then complaining after her rehire to DeMartini about her reduction in hours and being called off the schedule (i.e. demotion), and in response to the latter, Defendant did not investigate or did not do so adequately and/or did not do so when it did so (or did so adequately) for other employees who had not complained internally.

187.     Plaintiff suffered adverse employment actions, including having Defendant not investigate her complaints to DeMartini.

188.     There is or are a casual connection(s) between Plaintiff's complaints and the failure to investigate regarding her demotion complaints.

189.     Defendant intended to retaliate and did retaliate on the basis of Plaintiff's internal complaints, by not investigating her complaints to DeMartini.

190.     Defendant's retaliation concerned one or more of the activities enumerated in Title VII and the FCRA.

191.     As a result of the aforementioned conduct, Defendant violated Title VII and the FCRA.

192.     Any purported legitimate reason for Plaintiff's discipline given by Defendant is, in reality, a pretext for unlawful retaliatory treatment.

193.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in demotion, discipline and in termination.

194.     Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

195.     Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation based on her internal complaints of discrimination and/or that the violations of her rights were continuing in nature by Defendant.

196.     As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count IX – Title VII & FCRA Retaliation – Second Termination

197.    Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

198.    Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII and the FCRA.

199.    Plaintiff engaged in a statutorily protected activity(ies), complaining to Dore about his sexual assault and battery on January 27 and 28, 2019, and then complaining after her rehire to DeMartini about her reduction in hours and being called off the schedule (i.e. demotion), and in response to the latter, Defendant disciplined her resulting in termination.

200.    Plaintiff suffered adverse employment actions, being disciplined by Defendant for work performance and being late (more harshly disciplined than others who had not complained), and by her second termination.

201.    There is or are a casual connection(s) between Plaintiff's complaints, and the incorrect and discriminatory demotion, discipline and unlawful second termination she received from Defendant following the sexual harassment/assault and battery complaint and the complaints to DeMartini about her demotion.

202.    Defendant intended to retaliate and did retaliate on the basis of Plaintiff's internal complaints, by her second termination.

203.    Defendant's retaliation concerned one or more of the activities enumerated in Title VII and the FCRA.

204.    As a result of the aforementioned conduct, Defendant violated Title VII and the FCRA.

205.    Any purported legitimate reason for Plaintiff's discipline given by Defendant is, in reality, a pretext for unlawful retaliatory treatment.

SALAS LAW FIRM, P.A.

206.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in demotion, discipline and in her second termination.

207.     Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

208.     Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation based on her internal complaints of discrimination and/or that the violations of her rights were continuing in nature by Defendant.

209.     As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count X – Negligent Hiring, Retention, and Training

210.     Plaintiff realleges and incorporates paragraphs 1-91 as if fully set forth herein.

211.     This is an action against Defendant for negligent hiring, retention, and training.

212.     Defendant, through its agents, supervisors, and employees, like Dore, Harrison, DeMartini, and others, discriminated and retaliated against Plaintiff as set forth herein, including by hiring Dore, not training him and other managers in EEO issues, and then retained Dore, even though knowing of his propensity for or past history of sexual harassment and/or assault/battery.

213.     Plaintiff rejected this unlawful behavior.

214.     As a result of her refusal, Plaintiff suffered retaliatory actions.

215.     Plaintiff was forced to endure continued, unrelenting, abusive, and disparate treatment at the hands of individuals with the ability to hire, fire, promote, and discipline her.

216.    Defendant owed Plaintiff a duty of care to prevent and prohibit the unlawful, hostile, intimidating, offensive and demeaning work environment caused by its agents, supervisors, and employees, such as the individually named persons identified herein.

217.    Defendant owed Plaintiff a duty of care under Florida's Dram Shop Act, e.g. Fla. Stat. § 768.125, by failing to not over serve Dore alcohol at the holiday party because it knew or should have known of Dore's propensity to become intoxicated and/or habit of alcohol use at work and/or addiction to alcohol.

218.    Defendant owed Plaintiff a duty of care by not warning Plaintiff that she may be the target of a physical attack or sexual assault by Dore after the holiday party.

219.    This duty of care further includes the prohibition and elimination of harassment, discrimination and retaliation in Plaintiff's work environment.

220.    As a result of Defendant's breaches of its duties of care, Defendant caused Plaintiff damages, including being physically assaulted and battered and emotionally distressed.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory and retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief aimed at preventing future discrimination and retaliation;

(b)  Award Plaintiff judgment against Defendant for compensatory and punitive damages as determined by the trier of fact;

(c)  Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits she would have received absent the retaliatory treatment;

(d)  Enter judgment for punitive damages against Defendant (and Defendant Dore); and

(e)  Award all reasonable attorneys' fees and costs incurred in connection with this action;

and any other further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 27th day of November, 2019.

//s//Michael G. Green II, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email:  michael@jpsalaslaw.com
Fla. Bar. No. 60859

//s//John P. Salas, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593